UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 1:17-CR-224 |
| | ) | |
| v. | ) | The Honorable Theresa C. Buchanan |
| | ) | |
| YOUNG YI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION FOR DETENTION**

The United States of America, by and through undersigned counsel, hereby moves the Court, pursuant to 18 U.S.C. § 3142(e), to order the pretrial detention of defendant Young Yi ("Yi" or the "defendant") on the grounds that no condition or combination of conditions will reasonably assure the appearance of Yi for trial. As set forth below, Yi presents a serious risk of flight, given her lack of U.S. citizenship status, her extensive travel to South Korea, the massive fraud with which she is charged, the significant term of imprisonment that she likely faces if convicted, and the extensive network of bank accounts and assets under her direct or indirect control. Accordingly, the defendant should be detained pending trial.

**I. Background**

On October 12, 2017, a grand jury sitting in the Eastern District of Virginia returned a nine-count indictment charging the defendant with one count of conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349; six counts of health care fraud, in violation of Title 18, United States Code, Sections 1347 and 2; one count of conspiracy to defraud the United States, in violation of Title 18, United States Code, Section 371; and one

count of filing a false tax return, in violation of Title 26, United States Code, Section 7206(1). A co-defendant is charged in counts one through eight.

The indictment details how Yi and Dannie Ahn ("Ahn" or the "co-defendant") engaged in a sophisticated and multi-year health care fraud and tax evasion scheme. The Government has gathered substantial evidence of the charged scheme. Among other things, this evidence includes e-mails in which the defendant directed a subordinate employee to falsify various records, documents obtained from the defendant's companies' computers, her attempts to conceal her control over assets, and statements from numerous former employees and associates who are cooperating in this investigation, including, as described further below, the statement of her co-defendant. In short, the evidence is overwhelming.

On December 4, 2017, the defendant was arrested on her arrival at Dulles Airport from South Korea and made an initial appearance before this Court that same day. A detention hearing was scheduled for December 8, 2017. On December 5, 2017, the sole co-defendant, Dannie Ahn, was also arrested at Dulles Airport upon his arrival from Las Vegas. After his arrest and after being advised of his *Miranda* rights, Ahn gave a voluntary statement to Federal Bureau of Investigation ("FBI") agents in which he admitted to various aspects of his and Yi's involvement in the charged indictment and stated that he wished to cooperate in the FBI's investigation. Ahn, a U.S. citizen who operates a business in Northern Virginia, made his initial appearance on December 6, 2017, before this Court and was released on various conditions.

**II. Legal Standard**

    **A. The Factors Relevant to Pre-Trial Detention**

Pursuant to the Bail Reform Act, Title 18, United States Code, Section 3141, *et. seq.*, the Government may seek to detain a defendant if there is a serious risk the defendant will flee. 18 U.S.C. § 3142(f)(2). Thereafter, the court may order the defendant detained pending trial if it determines that she poses either a risk of flight or a danger to the community. *See* 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of the any other person and the community."). In making this determination, the Court must consider four factors: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

    **B. The Preponderance Standard Governs Flight Risk Determinations**

The standards of proof vary depending on the grounds for detention. That is, the Government must prove that a defendant poses a danger by clear and convincing evidence, 18 U.S.C. § 3142(f)(2), but must only prove that a defendant poses a risk of flight by a preponderance of the evidence. *See United States v. Stewart*, No. 01-4537, 2001 WL 1020779 (4th Cir. Sept. 6, 2001). Numerous other circuits agree that the standard of proof for detention based on risk of flight is preponderance of the evidence. *See, e.g., United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Jackson*, 845 F.2d 1262, 1264 n.3 (5th Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3rd Cir. 1986); *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (cited by Fourth Circuit in *Stewart); United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) (cited by Fourth Circuit in *Stewart*).

**III. Argument**

In light of the factors set forth in 18 U.S.C. § 3142(g), Yi is a serious flight risk and should be detained pending trial. Yi has the motive, means, and opportunity to leave the United States prior to trial. In addition, there is no condition or combination of conditions that would eliminate these risks and ensure her appearance at trial.

### A. The Nature and Circumstances of the Offenses Charged

The defendant has a compelling incentive to flee because of the seriousness of the charges facing her and the term of imprisonment that she would face if convicted. The charges are serious by any measure. As detailed in the indictment, the defendant owned, operated, and controlled several corporations that provided sleep studies and sleep-related treatment. Through her control of these various corporations, the defendant engaged in a long-term and complex scheme involving multiple conspirators. The defendant was not just aware of the scheme, but she and her co-defendant directed every aspect of the scheme to enrich themselves. Moreover, the manner in which the defendant committed these crimes demonstrates an aptitude for engaging in sophisticated deception and fraud.

The defendant's scheme was also multifaceted. Among other things, the defendant conducted fraudulent and medically unnecessary sleep studies, misled patients to induce them to have repeat and medically unnecessary sleeps, and submitted false insurance claims to health care benefit programs for reimbursement. In addition, to get patients, the defendant paid kickbacks to physicians for patient referrals and paid her employees (and the friends and family members of her employees) to undergo numerous sleep studies. Furthermore, to conceal this activity, she and her co-defendant created a tangled web of shell companies to move and dissipate the proceeds of her fraud.

As a result of this massive fraud, the defendant faces a significant term of imprisonment. The loss in this case is staggering. Indeed, the defendant's fraudulent and deceptive methods paid off. She and her co-defendant caused approximately $200 million in insurance claims to be submitted to health care benefit programs for reimbursement. As a result, health care benefit programs deposited approximately $85 million into various bank accounts under the defendant's control. These profits fueled the defendant's lavish lifestyle, including the purchase of luxury real estate, expensive clothing, expensive vehicles, and exotic vacations.

A preliminary review of the United States Sentencing Guidelines, applying the fraud offense guidelines found at § 2B1.1, indicates a base offense level of 24 – loss greater than $65 million under § 2B1.1(b)(1)(J) – under an *actual loss* analysis, and indicates a base offense level of 26 – loss greater than $150 million under § 2B1.1(b)(1)(J) – under an intended loss analysis. Assuming a Criminal History Category of I and applying just the actual loss (and absent consideration of any potential enhancements), the defendant is facing a guidelines sentence of up to eleven years. Applying the intended loss, the defendant is facing a guidelines sentence of up to fourteen years (again, with no consideration of appropriate enhancements). Moreover, conviction on count 1 alone carries a statutory maximum term of imprisonment of 20 years.

Given the length and breadth of her criminal conduct, her role in the scheme, and the extent of the losses, the defendant, if convicted, faces a significant period of incarceration. Accordingly, pretrial detention is warranted. *See United States v. Bikundi,* 47 F. Supp. 3d 131, 135 (D.D.C. 2014) (finding that the multi-million health care fraud scheme and resulting exposure to a significant term of imprisonment supported pre-trial detention).

**B. The Weight of the Evidence**

The weight of the evidence is overwhelming. Among other things, this evidence includes e-mails in which the defendant directed a subordinate employee to falsify various records, documents obtained from the defendant's companies' computers that corroborate the fraud, fabricated invoices, the defendant's attempts to conceal assets, and statements from numerous former employees and associates who are cooperating in this investigation. Perhaps more importantly, Dannie Ahn, the co-defendant, has already given a statement to the FBI in which he admitted to various aspects of the defendant's and his participation in the scheme.

The strength of the evidence is not limited to the health care fraud scheme. As charged in the indictment, the defendant similarly concealed her wealth and income from the Internal Revue Service. The defendant specifically directed her co-defendant to falsify the books and records of one of her corporations in order to reduce her taxable income. These directives were sent by e-mail and memorialize the defendant's intent, knowledge, and lack of mistake. Her efforts here, just as with her efforts in executing the health care fraud scheme, were based on her desire to obtain more money under false and fraudulent pretenses.

**C. History and Characteristics of the Defendant**

The Defendant's overseas ties, lack of citizenship, and extensive travel abroad militate heavily in favor of pretrial detention. *See United States v. Menaged*, 2017 WL 2556828 at \*3-5 (D. Ariz. 2017) (finding that a significant flight risk existed based upon the defendant's sophistication as a businessman operating financial accounts, access to significant amounts of cash, transfer of millions of dollars to friends, and a GPS tracking device would not prevent his travel overseas and could be easily removed in the first instance); *United States v. Szilagyi*, 2016 WL 795829 at \*2-6 (D. Ariz. 2016) (finding that while the defendant previously maintained a

residence in the United States she was residing overseas at the time of her arrest, she maintains a foreign passport and driver's license, and all evidence suggests "she began life anew" overseas).

Yi's ties to the United States are now weak. Any past ties to the United States are historical and should be given little weight. At the time she was arrested on December 4, 2017, Yi had been in South Korea for nearly a year. Although she does have some relatives in the United States, it is important to note that her husband was also recently in South Korea, significantly reducing any claims of ties to the United States. She has also sold eight properties in the last few years. Taken together, her recent, lengthy stay in South Korea, her status as a citizen of South Korea, and the sale of her properties strongly indicates that she does not plan to remain in the United States.

Although the United States has an extradition treaty with South Korea, the possibility of tracking down the defendant in a foreign country does not provide an adequate means of ensuring her presence for trial. If the defendant left the United States for South Korea, there is no guarantee that she would remain there. The defendant could easily travel from South Korea to any number of countries in the region, making it increasingly difficult for American authorities to follow her trail. In short, Yi has the reason to (*i.e.*, threat of a long prison sentence), the financial means and ability to avoid detection, and overwhelming ties to flee to South Korea and start over with her husband and the money that she has at her disposal. She poses a serious risk of flight that cannot be alleviated by any condition or combination of conditions.

Furthermore, an elaborate bail package involving electronic monitoring and posting of properties would not adequately mitigate the risk of flight in this case. *See United States v. Acherman*, 2015 WL 4576926 at *2 (D. Mass. 2015) (holding that a defendant's request of a $1.7 million security bond was insufficient in light of his $1 million real estate in Panama, the defendant's reported ability to pay a security company $35,000 a month to ensure home detention

works, the defendant's lack of citizenship or permanent residency in the United States and the defendant's significant connections to multiple foreign countries); *See e.g.*, *United States v. Mashali*, 2014 WL 692909 at * 4 (D. Mass. 2014) (holding that home detention on an electronic bracelet and the posting of a family home with $2 million in equity were insufficient conditions justifying release from pre-trial confinement given the amount of money the defendant currently possessed).

The defendant funneled millions of dollars of her assets through a web of corporations under her control and others that were nominally owned by family members and other associates. The mere structure of how the defendant has organized her financial affairs is strongly indicative of a proclivity for concealing her control over assets and placing those assets beyond the reach of the law. Indeed, the defendant, throughout the scheme, purchased multiple properties and titled those properties in the name of various corporations.

Similarly, according to the description of the fraud scheme in the indictment, the defendant had the sophistication to set up several companies, navigate the application process for those companies to obtain authorization for payments as a health care provider, and then to funnel money obtained from the fraud among multiple bank accounts to conceal the unlawful activity. The United States has already identified approximately 41 bank accounts under the defendant's direct or indirect control, and given the amount of ill-gotten gains in this case it is probable that other accounts with unknown deposits remain undiscovered. The defendant also regularly transferred money among her many accounts in a convoluted manner that is strongly indicative of concealment money laundering. Accordingly, the defendant has not just the motive, but the means to flee.

**IV. Conclusion**

This case presents a rare combination of flight risk indicators. The defendant is facing the serious prospect of spending a substantial amount of time in prison. She controlled multiple corporations that reaped $85 million in profits during the charged scheme. And she is a non-U.S. citizen who has spent almost the entire past year in South Korea, where she is a citizen.

Based on the foregoing, the defendant should be detained pending trial because no condition or combination of conditions will reasonably assure her appearance at trial.

Respectfully submitted,

Dana Boente
United States Attorney

By:       /s/
Kevin Lowell
Trial Attorney
Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, Suite 8410
Washington, DC 20005
Phone: (202) 262-7795
E-mail: kevin.lowell@usdoj.gov

By:       /s/
Katherine Wong
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Email: katherine.wong@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on this day of December, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and provided an electronic copy to the defendant's counsel of record.

By:            /s/

                Kevin Lowell
                Trial Attorney
                Department of Justice
                Criminal Division, Fraud Section
                1400 New York Avenue, Suite 8410
                Washington, DC 20005
                Phone: (202) 262-7795
                E-mail: <u>kevin.lowell@usdoj.gov</u>