**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:17-CR-224 |
| | ) | |
| YOUNG YI, *et al.*, | ) | Hon. Theresa C. Buchanan |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MOTION FOR RECONSIDERATION OF DETENTION
AND TO SET APPROPRIATE CONDITIONS OF RELEASE**

Defendant Young Yi, by and through counsel, hereby moves for reconsideration of the Court's Order of Pretrial Detention ("the Order") (D.E. 16). The Order issued pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.,* was entered based upon incomplete and inaccurate information provided by the prosecution. Further, since entry of the Order, the parties have negotiated through counsel and have largely reached agreement on potential bond terms, but for a disagreement concerning electronic monitoring, as discussed below (at Section III).

Ms. Yi respectfully requests a hearing on this motion on <u>Thursday, December 21, 2017 at 2:00 p.m.</u>, in order to obtain her release before the Christmas holiday.

**I.      Introduction & Factual Background**

Mrs. Yi in not a risk of flight. Mrs. Yi is a permanent resident of the U.S. who made her home in the U.S. almost 25 years ago. Mrs. Yi and her husband, Bum Hyun ("Danny") Son, a U.S. citizen, own a home in the district, a condominium in McLean, Virginia, as well as a property in Sterling, Virginia. All of Mrs. Yi's immediate family and friends reside in the U.S. Mrs. Yi's mother, sister, and two brothers, all reside within a 20-mile radius with their families. Mrs. Yi's mother lives in Germantown, Maryland; her younger brother, his wife and 2 children

- 2 -

live in Chantilly, Virginia; her older brother and younger sister both live in Fairfax, Virginia. Mrs. Yi and her husband are long-time members of the Korean Central Presbyterian Church in Centreville, Virginia, and the Shepherd Gate Church in Chantilly.

For over three and a half years, since the FBI executed a search warrant on First Class Sleep Centers on February 14, 2014, Mrs. Yi has been aware that she was a target of an investigation being conducted by the U.S. Attorney's Office in the Eastern District of Virginia. Throughout the course of the investigation, undersigned counsel had been in contact with the prosecution. Notwithstanding countless opportunities over the past three and a half years, Mrs. Yi did not flee. On the contrary, Mrs. Yi, through her attorneys, engaged in detailed discussions with the prosecution and attempted to cooperate with their requests. Mrs. Yi was well aware that her attorneys were communicating with prosecutors.

As recently as three days prior to her arrest, December 1, 2017, undersigned counsel contacted the prosecutor about this case, and the prosecutors did not respond to counsel's e-mail or voicemail. Counsel assumes that they did not return the call or e-mail because they were aware that they had indicted Mrs. Yi on October 12, 2017 [D.E. 1] and obtained an arrest warrant. It seems evident that the prosecution elected this course of action so as to seek detention. Had the prosecution advised Mrs. Yi's counsel of her Indictment, she would have surrendered at their request. Instead, the prosecution moved for detention attempting to use her international travel to support for their "serious risk of flight" argument. At the time of her arrest on December 4, 2017, Mrs. Yi was returning to Virginia for the purpose of her U.S. citizenship interview.[1]

---

[1] On December 8, 2017, the evening before the scheduled detention hearing, the prosecution filed a Motion for Detention [D.E. 15], and e-mailed several attachments to undersigned counsel. That Motion and the attachments are replete with factual errors based upon

The prosecution's Motion attaches great weight to Mrs. Yi's travel to South Korea, yet it rests on baseless assumptions about her travel and her intentions. The prosecution goes so far as to surmise that Mrs. Yi "does not plan to remain in the United States." Motion for Detention at 7. Once again, nothing could be further from the truth—Mrs. Yi's entire family, home, and all her finances are in the U.S. Mrs. Yi has retained counsel, cooperated with the prosecution's investigation for over 3 and a half years incurring great expense, all the while knowing she was a target. Further, the prosecution never inquired of counsel as to her travel or requested that she not travel. And, again, she was arrested upon returning to the United States for purposes of a U.S. citizenship interview.

If required, every witness capable of addressing Mrs. Yi's travel would attest to her and her husband's status as volunteering in a two-year program to help education children in a Christian school in South Korea. Had the prosecution inquired of counsel, they too would have been aware and could have investigated the circumstances of Mrs. Yi's travel. In August of 2016, Mrs. Yi and her husband accepted a two-year appointment to serve as teachers with the Jeju University of the Nations Affiliated Christian School, a Christian middle and high school program, in Jeju, South Korea. Throughout their time in South Korea, Mrs. Yi and her husband

---

incorrect assumptions. Funds from listed bank accounts were double-counted on the spreadsheet used at the detention hearing, payments to mortgage companies and loan holders were ignored to make funds seem unaccounted for, standard financial transactions were mischaracterized as attempts to "conceal" revenue, charitable donations were characterized as "strongly indicative of concealment money laundering," and corporate structures created by attorneys for First Class Sleep Centers were said to be "a web of corporations" designed to place assets "beyond the reach of the law." *See* Motion for Detention at 6-8. A thorough review of the financial records available to the prosecution reveals that the funds earned by First Class during the times of Mrs. Yi's involvement were largely reinvested into growing the business. Mrs. Yi and her husband do not live a "lavish" lifestyle, there was never any home built in the style of Versailles, nor did she buy luxury clothes or cars. Mrs. Yi invested the money that she earned from the operation of First Class into real estate—much of which were sites used or to be used for business operations as sleep centers. Finally, most of those properties are still held in LLCs or in a charitable foundation, New Covenant Foundation.

have been returning regularly to the U.S.—on summer and holiday breaks—because their entire network of friends and family are in the U.S. They are not paid for their work, and Mrs. Yi has been living in a dorm with children serving as their advisor. Finally, Mrs. Yi and her husband have made no efforts to establish residency in South Korea while performing their missionary work.

## II. Argument: No Serious Risk of Flight

"In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). The existing Detention Order fails to carefully limit that exception. When the prosecution, as here, "has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more." *Id.* at 754-55. Under the Bail Reform Act, 18 U.S.C. § 3142 *et seq.*, a defendant should be released on the least restrictive condition, or combination of conditions, that will reasonable assure her appearance at trial. *See* 18 U.S.C. § 3142(c). Pretrial detention is appropriate only in the limited circumstances set forth in § 3142(f), including when the defendant poses a "serious risk of flight." *See id.* § 3142(f).

When assessing the release conditions that will reasonably assure a defendant's appearance, the Court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). A mere theoretical opportunity for flight does not support detention.

The most important factor for consideration by the Court is Mrs. Yi's personal history and characteristics. In assessing her personal history and characteristics, the Court should weigh

Mrs. Yi's extensive knowledge of the investigation, her past cooperation with the prosecution, her family and community ties, including her status as a permanent resident and 25 year residence in the community. *See* 18 U.S.C. § 3142(g)(3)(A). On balance, consideration of these factors weigh heavily in favor of release on bond.

The government relies on mere assumptions to suggest that Mrs. Yi's strong ties to the U.S. should be discounted because of her citizenship status and volunteer work in South Korea. The prosecution characterized Mrs. Yi's ties to this country as "weak" because she "had been living in South Korea for nearly a year." Motion for Detention at 7. Yet, Mrs. Yi's family ties to the United States are "the "sort of family ties from which [the Court] can infer that [she] is so deeply committed and personally attached that [she] cannot be driven from it by the threat of a long prison sentence." *United States v. Stanford*, 630 F. Supp. 2d 751, 756 (S.D. Tex. 2009) (quoting *United States v. Rueben*, 974 F.2d 580, 582, 586 (5th Cir. 1992)). The government's detention request is premised on gross mischaracterizations and assumptions about Mrs. Yi's ties to the U.S. Mrs. Yi has resided continuously in the United States, mostly in the greater Washington D.C. area, for the past 25 years—the majority of her life. The time she has spent in South Korea is based on a two-year volunteer mission to help educate children.

Mrs. Yi came to this country in 1992 when her uncle, who was serving in the U.S. military, sought to help his sister and her children come to the U.S. Mrs. Yi's father passed away when she was 6 years old, and her mother raised four children on her own. Mrs. Yi's family came to the U.S. with $300 and they did not speak English. Mrs. Yi attended community college in Montgomery County, Maryland, and worked tirelessly to build a respected business in our community. All of her immediate family resides in the U.S., in close proximity to her, and they maintain a close familial relationship. *See Truong Dinh Hung v. United States*, 439 U.S. 1326,

1329 (1978) (ordering bail pending appeal where defendant "resided continuously in this country . . . [for 13 years], and has extensive ties in the community," including maintaining "a close relationship with his sister, a permanent resident of the United States [for nine years]"); *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (reversing order of pretrial detention because of defendant's "family ties to the area").

Mrs. Yi's husband is a U.S. citizen, a graduate of the University of Chicago and Columbia University. Prior to his work to South Korea, Mr. Son worked as an AP Chemistry teacher in Virginia. Although Mrs. Yi has frequently traveled to South Korea for her volunteer work, she has no network of friends or family in South Korea.

Mrs. Yi's "opportunities for flight . . . hardly establish[es] any inclination on [her] part . . . to flee," particularly because ample "other evidence supports the inference that [she] is not so inclined." *Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978) (Brennan, J., in chambers) (ordering bail pending appeal). Once again, she knew about the investigation and continued to return from her two-year volunteer mission, her entire immediate family is located within a 20-mile radius, she has no assets outside of the U.S., and is willing to submit herself to conditions that will assure her appearance throughout this proceeding.

Mrs. Yi's conduct throughout the government's multi-year investigations is compelling evidence of his desire to face the charges against her, and not to flee. Having had over three years under investigation, Mrs. Yi would certainly not have sat by spending enormous resources cooperating with the prosecution in an effort to convey her innocence if she were intent on flight. Over the past three years, Mrs. Yi was keenly aware of developments in the investigation, given her active cooperation with the investigation, her attorneys' communications with and presentations to prosecutors, the issuance of grand jury subpoenas to most of her family

members, and the frequent rumors of her imminent indictment—yet "she did not abscond. This is strong evidence that [she] is not inclined to flee." *United States v. Hammond*, 204 F. Supp. 2d 1157, 1166 (E.D. Wis. 2002) (denying government's motion to revoke pretrial release order, and "noting that "[o]ne year before his arrest [government] agents advised defendant that he was facing charges, and he did not abscond"); *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991) (affirming release order, except as to forfeiture condition, and affirming district court's finding of no flight risk where "although [the defendant] had known for some time that he was under FBI surveillance, he did not flee[,] [h]e had appeared before several grand juries when subpoenaed[,] [a]nd he stayed put when confronted with rampant rumors of his imminent indictment").

The prosecution places undue emphasis on what it claims to be strong evidence in a case involving serious charges.[2] But the nature and circumstances of the charged offense and weight of the evidence "are not the most significant [factors for consideration] in showing a [d]efendant pose[s] a risk of fleeing." *Kaplowitz*, 2014 WL 2155231, at *5 (granting release despite the two factors (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985); *United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988)); *see also United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) ("the weight of the evidence is the least important" of the pretrial release factors); *United States v. Barnett,* 986 F. Supp. 385, 393 (W.D. La.1997) (same); *United States v.*

---

[2] The allegations against Mrs. Yi likely to lead to acquittal on the charged counts. The Indictment only includes 5 substantive counts involving 5 patients. These substantive counts amount to a total billed amount of $18,800. The prosecution also knows based on the uncontested statements of numerous witnesses that the bulk of First Class's claims were legitimate and in no way tainted by fraudulent activity. First Class employed numerous professionals including licensed physicians. Notably, even the charged substantive counts occurred at a time when Mrs. Yi was not actively involved with running the businesses. Further, Contrary to the prosecution's argument that Mrs. Yi engaged in a "complicated" and "unusual" scheme of creating companies and engaging in financial transfers in order to secret her assets, the creation of LLCs to hold sleep center and other properties is common. Further, many of the transactions executed by Mrs. Yi and her lawyers were done to create the New Covenant Foundation – an entity designed to further the mission of the Christian church.

*Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009) ("courts have found this factor to be of least importance in the detention determination"). "The seriousness of the crime [alleged] may have distracted the magistrate [judge]'s attention from the priorities established by Congress by the Bail Reform Act. Until a defendant has been convicted, the nature of the offense, as well as the evidence of guilt, is to be considered only in terms of the likelihood of his making himself unavailable for trial." *United States v. Edson*, 487 F. 2d 370, 372 (1st Cir. 1973).

Since August of 2016, Mrs. Yi and her husband frequently traveled to South Korea for purposes of their volunteer work at Jeju University. Mrs. Yi has returned to her home in Virginia when school was not in session. Rather than an aggravating factor supporting a finding that she is a risk of flight, Mrs. Yi's repeated returns to Virginia from South Korea should mitigate any concern. Each trip, Mrs. Yi presented her documents to Customs and Border Protection at both departure and arrival. While she could have absconded after the execution of the search or on any one of her trips, she did not. She applied to become a U.S. citizen and her travel to the U.S. on December 4, 2017 was for the purpose of her citizenship interview. Nothing could be greater evidence of her intent to stay in the U.S. than her taking that flight from South Korea to Virginia for the very purpose of seeking to become a citizen.

From the very beginning of this investigation, Mrs. Yi has been committed to facing these allegations head-on. Mrs. Yi and her husband's offer to surrender all travel documents— further refutes any concern that Mrs. Yi may be a flight risk. *See, e.g.*, *United States v. Chen*, 820 F. Supp. 1205, 1210-11 (N.D. Cal. 1992) (granting pretrial release where, *inter alia*, "[t]he defendants' passports either have been seized or can be surrendered as a condition of release").

Finally, after providing the prosecution all requested bank records and statements, even identifying accounts unknown to the prosecution, as of today, Mrs. Yi has approximately

$20,000 in liquid assets available to her and her husband to pay living expenses. In addition, the prosecution has represented that they have placed liens upon all the real property identified in the indictment.

### III. <u>Proposed Terms of Bond</u>

Undersigned counsel has discussed potential bond terms with the prosecution, and the parties largely agree on the following terms, with one exception noted below.

**Points of Agreement**

1.      The parties agree that Mrs. Yi, upon her release, will obtain a current bank statement for the 7001 Heritage Village Plaza 125 LLC bank account and provide it to the government. The parties understands that as of March 2017, the account contained approximately $28,000. If there is a meaningful increase in the amount of funds in the account, the parties will discuss and present to the court whether a cash bond is necessary or whether the funds will be used as part of Mrs. Yi's legal defense.

2.      The parties understand that Mrs. Yi is tied to approximately $250,000 in liquid assets (mutual, cash, etc.). These funds are in the process of being transferred to Mrs. Yi's counsel for payment of legal fees. Ms. Yi agrees to transfer all or substantially all of these liquid funds to Arnold & Porter Kaye Scholer for legal fees within 5 business days of Mrs. Yi's release.

3.      The parties agree to a $625,000 property bond secured by $1.25 million in real estate that includes the following properties: (1) 13820 Lullaby Road, Germantown, Maryland, (2) 7001 Heritage Village Plaza, Unit 125, Gainesville, VA, (3) 12105 Greenway Court, Unit 192, Fairfax, VA. If Mrs. Yi sells the Heritage Village Plaza and Greenway Court properties to

satisfy legal fees, the government would (upon a valid sale) release its liens[3] on these properties in order to allow payment to Arnold & Porter Kay Scholer LLP, Mrs. Yi's counsel.[4]

Alternatively, in the event that Arnold & Porter Kay Scholer LLP can obtain (1) a promissory note signed by Ms. Yi that states she will sell the Heritage Village Plaza and Greenway Court properties and direct that the proceeds of the sales be transferred directly and immediately to Arnold & Porter Kay Scholer LLP to satisfy legal fees; and (2) file liens on the Heritage Village Plaza and Greenway Court properties consistent with the promissory note, then the parties will agree to an appropriate property bond for the Lullaby Road property only. The prosecution has indicated that, in the event this alternative arrangement is pursued, the prosecution will object to Ms. Yi's release until the liens are filed by Arnold & Porter Kaye Scholer LLP.

4. The parties agree that Mr. Jack Chung, along with his wife Ok Lan Chung, will serve as third party custodians for Mrs. Yi. The prosecution has indicated its approval to the Chungs serving as third party custodians. Mr. Chung has been interviewed by pretrial services and is awaiting its approval.

5. The parties agree that Mrs. Yi will surrender all travel documents, not obtain a new documents, and limit travel to the Washington, D.C. metro area unless approved by Pretrial Services or the Court.

---

[3] The government has indicated that, in order to place liens on these 3 properties as a result of the property bond, the government may require an order from court allowing it to place the liens.

[4] For purposes of the property bond, counsel for Mrs. Yi will provide copies of the deeds and county assessments for each property. Mrs. Yi will also provide documentary proof that she is the sole member of the LLC that owns the Heritage Village property. Further, Mrs. Yi's mother, who is on the deed for the Lullaby Road property, will be present at the bond hearing.

At present, undersigned counsel has an original deed for the Heritage Village Plaza property and is working to locate the original deeds for the Lullaby Road and Greenway Court properties. Counsel has copies of each deed. Additionally, counsel is in the process of ordering title searches for all three properties to be completed no later than noon on December 21.

6. The parties agree that Mrs. Yi will not engage in any financial transaction of more than $5,000 without prior approval from Pretrial Services or the Court.

7. The parties agree that Mrs. Yi will have no contact with any potential witness outside of the presence of counsel. With respect to family members, Mrs. Yi may have contact but may not discuss the case outside the presence of counsel.

8. The parties agree that Mrs. Yi will notify all current employers and future employers (that may employ her before trial) of the indictment.

9. Funds held by Arnold & Porter Kay Scholer for purposes of legal fees are held in trust and their ownership remains with Mrs. Yi until earned. That parties agree that fees and costs paid to Arnold & Porter Kay Scholer that remain unearned at the conclusion of this matter will be deemed to be assets of Mrs. Yi.

**Points of Disagreement:**

1. The prosecution requests GPS/electronic monitoring of Mrs. Yi. Mrs. Yi believes such monitoring is unnecessary under the circumstances and the other bond conditions, including her agreement to give up travel documents and live with a third party custodian, as well as the presence of Mrs. Yi's family in the area. Mrs. Yi also is willing to pledge significant real estate properties to be surrendered by her and her husband if she fails to appear—if she were to flee, execution on such pledge would leave her and her husband financially destitute.

## IV. Conclusion

For the foregoing reasons, after appropriate consideration of the § 3142(g) factors, the pretrial detention order should be revoked and the Court should impose the least restrictive condition, or combination of conditions, that will reasonable assure Mrs. Yi's future appearance. *See* 18 U.S.C. § 3142(c).

Respectfully submitted,

/s/ Ian S. Hoffman
Ian S. Hoffman (VA Bar # 75002)
Kirk Ogrosky (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Telephone: +1 202.942.5000
Facsimile: +1 202.942.5999
E-mail: ian.hoffman@apks.com
E-mail: kirk.ogrosky@apks.com

*Counsel for Defendant Young Yi*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on December 20, 2017, with the Court's CM/ECF system which will send a notice of electronic filing to counsel of record for all parties.

/s/ Ian S. Hoffman
Ian S. Hoffman (VA Bar # 75002)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Telephone: +1 202.942.5000
Facsimile: +1 202.942.5999
E-mail: ian.hoffman@apks.com

*Counsel for Defendant Young Yi*