IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YOUNG YI,<br>    Defendant. | No. 1:17-CR-224<br><br>Hon. Liam O'Grady<br><br>Trial: July 16, 2018 |

**UNITED STATES' RESPONSE IN OPPOSITION
TO THE DEFENDANT'S MOTION TO STRIKE SURPLUSAGE**

The United States of America, by and through undersigned counsel, hereby responds in opposition to the defendant's Motion to Strike Surplusage. *See* Doc. No. 60. As set forth in greater detail below, the alleged surplusage pertains to relevant allegations about the defendant's profit motive in this case, the amount of money she billed to health care benefit programs in furtherance of the crime, and the breadth of the alleged conspiracy. Moreover, the allegations are neither inflammatory nor prejudicial. Accordingly, the defendant's motion should be denied in its entirety.

**I.  Background**

In October 2017, a federal grand jury sitting in the Eastern District of Virginia returned a nine-count indictment charging defendant Young Yi (hereinafter "defendant" or "Yi") and Dannie Ahn, who has since pleaded guilty, with one count of conspiracy to commit health care and wire fraud, in violation of 18 U.S.C. § 1349; six counts of substantive health care fraud, in violation of 18 U.S.C. § 1347; one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; and one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1). Doc. No. 1. These charges are associated with a variety of entities that the defendant either owned or controlled, which operated various sleep centers, sold durable medical equipment used to treat

various sleep disorders, or were used to bill the health care insurance companies. Collectively, these entities are referred to in the indictment as "1st Class."

Count 1 of the indictment alleges a dual-object conspiracy to commit health care fraud and to commit wire fraud. *Id.* at 9, ¶ 43. The alleged purposes of this conspiracy included "enrich[ing] the conspirators by defrauding health care benefit programs," "to fraudulently induce patients to agree to and receive sleep studies and medical equipment," and "to divert proceeds of the fraud for the defendants' personal use and benefit." *Id.* at 11, ¶¶ 44–46. The indictment then goes on to describe the manner and means by which the defendants sought to accomplish the conspiracy and these purposes. *Id.* at 11–13.

The defendant seeks to strike three categories of allegations from the indictment. First, the defendant asks the Court to strike ¶ 47(p), which alleges that the defendant used the proceeds derived from the conspiracy to fund her lifestyle—including the purchase of exclusive real estate, expensive vehicles, luxury clothing, and exotic vacations. *See* Doc. No. 61 ("Def. Mem.") at 1, 3–5. Second, the defendant seeks to strike a column of the chart set forth in ¶ 50, which lists the substantive counts of health care fraud. *Id.* at 1, 6–8. Specifically, the defendant seeks to strike the column in that chart alleging the "amount billed" by the defendant's business for each fraudulent claim. *Id.* Third, the defendant seeks to strike portions of ¶¶ 48 and 51—specifically, the language in the introductory charging language for the substantive health care fraud counts and the tax fraud conspiracy, respectively, that allege that the defendant conspired with "others" known and unknown to the grand jury. *Id.* at 1, 5–6.

## II. Applicable Law

The Federal Rules of Criminal Procedure provide that "[t]he court on motion of the defendant may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The

courts have made clear that Rule 7(d) must be strictly construed against striking alleged surplusage. *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006); *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989). Courts have developed an "exacting standard" necessary for striking language from an indictment returned by the grand jury. 1 Charles Alan Wright, *Fed. Prac. & Proc. Crim.* § 128 (4th ed. updated April 2018). Specifically, "[a] motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *Williams*, 445 F.3d at 733 (internal quotation omitted).

It is not enough for the subject language to be either (1) irrelevant or (2) inflammatory and prejudicial; it must be both. *See, e.g.*, *United States v. Hartsell*, 127 F.3d 343, 353 (4th Cir. 1997) (declining to strike surplusage because it was not prejudicial); *Poindexter*, 725 F. Supp. at 35 (noting that it is "settled that a defendant is entitled to have language stricken only if it is both irrelevant and prejudicial"); *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006) ("[I]nformation that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion."); *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.") (citation omitted); *United States v. Andrews*, 749 F. Supp. 1517, 1519 (N.D. Ill. 1990). Thus, legally relevant information is not surplusage.

Due to this exacting standard, requiring both irrelevancy and prejudice, motions to strike information as surplusage are rarely granted. *See, e.g.*, *Williams*, 445 F.3d at 733–34 (upholding refusal of district court to strike allegations of murder from indictment); *United States v. Kemper*,

503 F.2d 327, 329 (6th Cir. 1974) (noting that "the standard under Rule 7(d) has been strictly construed against striking surplusage"); Wright, *Fed. Prac. & Proc. Crim.* § 128. Moreover, a district court's ruling on a motion to strike is reviewed for abuse of discretion. *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979).

**III.**  **Argument**

As set forth in more detail below, the defendant has failed to meet the substantial burden that she faces under Rule 7(d) and the cases cited above. None of the alleged surplusage is irrelevant, nor is any inflammatory or prejudicial.

**A.  Evidence regarding the defendant's disposition of the fraud proceeds, including through the purchase of luxury items, is relevant to motive and intent, and such evidence is neither inflammatory nor prejudicial.**

First, the defendant's arguments in support of striking ¶ 47(p) do not withstand scrutiny. As set forth in that subparagraph, the defendant used fraud proceeds derived from the conspiracy to fund the purchase of land in order to construct a mansion modeled after the Palace at Versailles, expensive vehicles, exotic vacations, and luxury clothing, among other things. Evidence about what the defendant did with the fraud proceeds constitutes pertinent evidence of motive—which is one admissible method of circumstantially proving intent to defraud, an element of the charged fraud offenses here.

"Evidence of financial gain is particularly probative in a fraud case to establish the defendant's intent to defraud." *United States v. Bajoghli*, 785 F.3d 957, 966–67 (4th Cir. 2015) (citing *United States v. Beverly*, 284 F. App'x. 36, 40 (4th Cir. 2008) (noting that "intent [to defraud] can be inferred . . . from profits") (internal quotation omitted)); *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007) (affirming health care fraud convictions); *United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007); *United States v. Wheeler*, 889 F. Supp. 2d 64, 68

4

(D.D.C. 2012) ("In a § 1347 [health care fraud] case, 'intent [to defraud] can be inferred . . . from profits'" (quoting *Dearing*, 504 F.3d at 901))).

Moreover, "[i]n the Fourth Circuit . . . evidence of lavish spending is 'clearly probative of [the defendant's] motive (*e.g.*, wealth accumulation and maintenance)'" in a fraud case. *United States v. Abdulwahab*, No. 3:10cr248, 2016 WL 2349109, at *7 (E.D. Va. May 3, 2016) (unpublished) (quoting *United States v. Cole*, 631 F.3d 146, 155 (4th Cir. 2011). *See also United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011) ("Motive is always relevant in a criminal case, even if it is not an element of the crime. And with financial crimes, the more money, the more motive." (internal quotation and citation omitted)); *United States v. Jackson-Randolph*, 282 F.3d 369, 378–79 (6th Cir. 2002) (evidence of defendant's lavish purchases and vacations was relevant to show motive to commit fraud); *United States v. Mobley,* 193 F.3d 492, 495–96 (7th Cir. 1999) (evidence of gambling, fur coats, and other extravagant purchases was relevant to show that the defendants had a source of unlawful income).

If evidence of profit and financial gain is "particularly" probative to intent to defraud, and if evidence of lavish spending is "clearly" probative to show motive in a fraud case, allegations regarding such evidence cannot, of course, be *irrelevant* in the context of a surplusage motion. This is sensible, as the Fourth Circuit has made clear that overly restrictive rulings on such matters "simply do[] not allow the government to present its case with sufficient detail and narrative." *Bajoghli*, 785 F.3d at 967. Simply put, the allegations in ¶ 47(p) of lavish spending by this fraud defendant are not just relevant—they are particularly and clearly so. As such, the defendant's motion to strike those allegations fails the first prong of the surplusage inquiry.

Even assuming, however, that the spending allegations are irrelevant—which they are not—they are neither prejudicial nor inflammatory. *Cf. United States v. Bradley*, 644 F.3d 1213,

1270–72 (11th Cir. 2011) (overruling Fed. R. Evid. 403 objection in health care fraud case of "wealth" evidence regarding defendant's assets). Indeed, courts have rejected motions to strike surplusage involving allegations far more serious than those involved here. *See, e.g.*, *Williams*, 445 F.3d at 733–34 (no abuse of discretion where district court refused to strike relevant allegations of murder from a felon-in-possession indictment); *United States v. Schuler*, 458 F.3d 1148, 1153–54 (10th Cir. 2006) (allegation in indictment that defendant victimized in excess of 250 people, where at trial Government produced evidence of only 24 victims, not sufficiently inflammatory or prejudicial to warrant striking language from indictment); *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (affirming district court's denial of motion to strike references in air piracy indictment to defendant's shooting of passengers). And where, as here, the allegations are clearly admissible to prove a core issue at trial—intent to defraud, by showing motive to accumulate wealth and maintain it through illegal means—they do not constitute surplusage.[1]

Lastly, none of the cases cited by the defendant support striking the allegations of lavish spending in this case as surplusage. The defendant relies heavily upon *United States v. Chikvashvili*, 114 F. Supp. 3d 300 (D. Md. 2015), also a health care fraud case, to support the

---

[1] Some court decisions, including some cited by the defendant, spill ink debating whether there is a meaningful distinction between "relevance" in the first part of the surplusage inquiry and "relevance" in the context of an evidentiary ruling at trial. *See, e.g.*, *United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005); *United States v. Afsharjavan*, No. 1:15cr144, 2015 WL 5047438, at *3–4 (E.D. Va. Aug. 26, 2015) (unpublished). Such cases appear, at times, to define "irrelevance" in the surplusage context as "'unnecessary' in making out a *prima facie* pleading of the violation.'" *Cooper*, 384 F. Supp. 2d at 960 (quoting *Hartsell*, 127 F.3d at 353), *quoted in Afsharjavan*, 2015 WL 5047438, at *3. But "[n]o matter how framed, it is an exacting standard" that applies to surplusage motions, "and courts are often slow to grant" them as a result. Wright, *Fed. Prac. & Proc. Crim.* § 128. That is because even if an allegation is "unnecessary," it strains credulity to say that it is inflammatory and prejudicial if it is "particularly" and "clearly" probative of a core element of the crime. Here, motive evidence of lavish spending is particularly and clearly probative of intent to defraud, and is thus neither inadmissible nor surplusage.

general proposition that indictment language that does not describe the charged offense should be stricken. Def. Mem. at 3–4. *Chikvashvili*, however, says nothing about evidence of spending or profit motive in a fraud case, health care or otherwise. *Chikvashvili* stands for the unremarkable proposition that an allegation that death resulted from conduct charged as fraud, a sentencing enhancement, is surplusage where the charges do not allege that death was an intended result of the conduct. 114 F. Supp. 3d at 305. The distinction between allegations about the disposition of fraud proceeds in a fraud case and death resulting from fraudulent conduct is vast. *Chikvashvili* does not bear the weight the defendant places on it.

The defendant similarly attempts to wring far too much from *United States v. Gerlay*, No. 3:09cr85, 2009 WL 3872143, at *1–3 (D. Alaska Nov. 17, 2009), an unpublished decision striking allegations regarding discipline by a medical board of a defendant doctor in a health care fraud case. Rather, the only language form *Gerlay* that should matter to the Court here is how *Gerlay* described the applicable standard: "If language in the indictment constitutes information that the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be as long as the information is legally relevant." *Id.* at *1.

**B. Evidence of the amount of money that the defendant billed health care benefit programs is relevant to prove intent and motive, and it is neither inflammatory nor prejudicial.**

Next, the defendant claims that the allegation regarding the "Amount Billed [alleged in ¶ 50] should be stricken as irrelevant and prejudicial." Def. Mem. at 6–7. The defendant cites no authority for this request, and for good reason: the presentations of these claims for payment, which contain the billed amount, were the very executions of the fraud as charged in the indictment, and the fraudulent claims themselves will be core evidence presented at trial. An essential part of the defendant's claims to the health care benefit programs were her requests for

7

payment – in other words, the billed amount. The fact that she was unsuccessful in obtaining these amounts and ultimately received less than the full amount on these claims does not render these initial submissions irrelevant, nor is it relevant to whether a fraud was committed.

Contrary to the defendant's contention, the total billed amount by the defendant is highly relevant and probative of the defendant's motive and intent to defraud and perform unnecessary and fraudulent sleep studies, as well as the loss related to the defendant's scheme. *Cf. Bajoghli*, 785 F.3d at 967 (courts must "allow the government to present its case with sufficient detail and narrative"). A bank robber who demands $1 million from a teller but only manages to steal $100,000 cannot later claim that his initial demand should be struck or bastardized through redaction simply because the threat was much greater than his actual gain. Likewise, the initial demand would still be relevant, even if the bank did not have $1 million available to give the robber at the time. Nor would it make any sense to strike such an allegation or exclude such evidence because the bank robber later claimed that he really knew there was never actually $1 million inside the bank's safe. Simply put, the magnitude of a fraudulent request for payment is *fairly* prejudicial *precisely because* it proves just how much the defendant was motivated by greed. It is, in fact, the best circumstantial evidence of the extent to which the defendant hoped to profit from a fraud scheme. The "amount billed" is thus plainly relevant.

In any event, the billed amounts for these counts are not inflammatory or prejudicial. Every argument made by the defendant in her motion to strike can be introduced through cross-examination, independent evidence, or otherwise, should the facts warrant it. To extend the analogy, the bank robber who claims that his demand for $1 million was specious because he was demanding money he never thought he would get can testify to that belief on the stand; that does

not, however, mean that the Court should displace the jury's function by striking the defendant's unreasonable demand or excluding it from evidence.

C. **Allegations that the defendant schemed and conspired with "others" is relevant, and it is neither inflammatory nor prejudicial.**

Finally, the defendant asks this court to strike language in ¶¶ 48 and 51 referencing "others" with whom the defendant schemed and conspired.[2] This argument is as nonsensical as it is meritless. Notably, the defendant's argument in support of this request in the motion to strike includes zero analysis of the actual standard that applies here. First, is it relevant that the defendant conspired not just with Dannie Ahn, her co-conspirator, but also with others? The answer is clearly yes. Second, is it inflammatory and prejudicial to say that a scheme and conspiracy that involved multiple individuals involved "others"? The answer is clearly no. As such, the defendant's argument fails.

More to the point, the defendant cites neither binding nor persuasive authority to the contrary. Rather, the defendant extracts principles from cases that they do not support. For example, the defendant cites *United States v. Mostafa*, 965 F. Supp. 2d 451, 466 (S.D.N.Y. 2013), for the proposition that supposedly broadening language poses a danger that is "particularly acute, when as in this Indictment, the broadening language is included in the charging paragraphs of the indictment." Def. Mem. at 5–6. But what *Mostafa* actually says is both less confusing and more harmful to the defendant's argument: "[T]here is no prohibition to an indictment referring to unindicted, unnamed coconspirators." *Mostafa*, 965 F. Supp. 2d. at 467. Similarly, "[t]hese surplusage issues need not be fully addressed at this time, however. Courts in this district [the Southern District of New York] routinely await presentation of the Government's evidence at trial

---

[2] Although the government is required to prove the existence of an agreement, is *not* required in the indictment to name (or charge) each and every participant in the agreement.

9

before ruling on a motion to strike." *Id*. In other words, if the United States never actually adduces proof from which a reasonable jury could conclude that the defendant and Dannie Ahn conspired and schemed with "others," then—and only then—should the Court even entertain a motion to strike that allegation.[3]

## IV. Conclusion

The allegations that the defendant seeks to strike are relevant, and they are neither prejudicial nor inflammatory. As a result, the defendant's motion should be denied.

---

[3] The defendant's reliance on *United States v. Alsugair*, 256 F. Supp 2d 306 (D.N.J. 2003) is similarly unavailing. *Alsugair*, which is unpersuasive, appeared to reject the otherwise sensible conclusion in *Mostafa* that striking "and others" would be illogical before trial because of concern that "the court's recitation of the indictment at the opening of the case" would make later removal of that prejudicial language "ineffective." *Alsugair*, 256 F. Supp. 2d. at 318. But the Court need not refer to any "others" in its recitation of the allegations here before its final charge, and in any event, there will be evidence here that the defendant conspired and schemed with Dannie Ahn and "others." Moreover, the defendant also cites cases that have struck allegations that courts interpreted as referring to other crimes that were not charged, but there is no such allegation here, and those cases are thus entirely beside the point.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Sandra Moser
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice


By: _____/s/_____
     Katherine L. Wong
     Ryan S. Faulconer
     Assistant United States Attorneys
     United States Attorney's Office
     2100 Jamieson Avenue
     Alexandria, VA 22314
     Phone: (703) 299-3700
     Fax: (703) 299-3981
     Email: katherine.l.wong@usdoj.gov
            ryan.faulconer2@usdoj.gov


By: _____/s/_____
     Kevin Lowell
     Special Assistant U.S. Attorney (E.D. Va.)
     Trial Attorney, Fraud Section
     Criminal Division
     U.S. Department of Justice
     1400 New York Avenue, Suite 8410
     Washington, DC 20005
     Phone: (202) 262-7795
     Email: kevin.lowell@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 1, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

                                                              _____/s/_____
                                                              Katherine L. Wong
                                                              Assistant United States Attorney